James Lee DOWER et al., Appellees,

v.

Harold M. BOSLOW, Director, Patuxent Institution, Appellant.

James Lee DOWER, Appellant,

v.

DIRECTOR, PATUXENT INSTITUTION, Appellee.

Nos. 75–1802, 75–1803.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 3, 1976.

Decided March 5, 1976.

---

Karl G. Feissner, Hyattsville, Md. [court-appointed counsel] (Feissner, Garrity, Levan & Schimel, Hyattsville, Md., on brief), for appellants in 75–1803 and appellees in 75–1802.

John J. Garrity, Hyattsville, Md. [court-appointed counsel], for appellees in 75–1802.

Alan S. Davis, Baltimore, Md. (Albert J. Matricciani, Jr., Charles F. Morgan and Luther G. Blackiston, Baltimore, Md., on brief), for amicus curiae for Legal Aid Bureau, Inc.

Donald R. Stutman, Asst. Atty. Gen. of Md., Baltimore, Md. (Francis B. Burch, Atty. Gen. of Md., and Clarence W. Sharp, Asst. Atty. Gen. of Md., Baltimore, Md., on brief), for appellants in 75–1802 and appellees in 75–1803.

Before CRAVEN, RUSSELL and FIELD, Circuit Judges.

CRAVEN, Circuit Judge:

Petitioners-Appellants, all presently confined in Patuxent Institution, sought habeas corpus relief in the district court. Their claim was that commitment pursuant to adjudication as defective delinquents under 3 Md.Ann. Code art. 31B, § 5 violated the due process and equal protection clauses of the fourteenth amendment.[1] The statutory definition of defective delinquent is as follows:

For the purposes of this article, a defective delinquent shall be defined as an

---

1. The district court detailed petitioners' claims as follows:

Plaintiffs raise three primary contentions herein. First, they allege that their rights under due process and equal protection principles were violated when Patuxent officials failed to inform them of their "rights" before their examinations at Patuxent and also when those officials failed to respect those rights during the course of those examinations. The rights that plaintiffs claim they are entitled to have during the examination process include the right to counsel, the right to remain silent, and the right to assert, and to have respected, the privilege against self-incrimination. Second, plaintiffs allege that their due process rights were violated because the standard of proof which the State was required to meet at their delinquency determination hearings was the "preponderance of the evidence" test rather than either the "proof beyond a reasonable doubt" or the "proof by clear and convincing evidence" standard. Finally, plaintiffs allege that they were not afforded their rights, under the Equal Protection Clause when the criteria, procedures and treatment afforded to them under the Maryland Defective Delinquency Act, 3 Md.Ann.Code art. 31B, §§ 1–19 (1973 Cum.Supp.) are— . . . considered in relation to the criteria, procedures, and treatment that the State of Maryland makes available to other persons, not "defective delinquents," committed for compulsory psychiatric treatment. . . .
(Footnotes omitted.)

individual who, by the demonstration of persistent aggravated antisocial or criminal behavior, evidences a propensity toward criminal activity, and who is found to have either such intellectual deficiency or emotional unbalance, or both, as to clearly demonstrate an actual danger to society so as to require such confinement and treatment, when appropriate, as may make it reasonably safe for society to terminate the confinement and treatment.

█ Judge Kaufman, in a carefully reasoned opinion,[2] held there had been no violation of due process. We agree. He concluded, however, that Carl[3] was denied equal protection by the different burden of proof employed in determining defective delinquency from that used for effectuating involuntary civil commitment.[4] We disagree as to the equal protection claim, and conclude that petitioners below have failed to establish such a constitutional violation. We affirm in all other respects for the reasons stated in the opinion of the district judge.

## I.

█ In considering the equal protection claim, Judge Kaufman examined the different procedures utilized for determining whether an individual should be committed as a defective delinquent as compared with the procedures for effecting an involuntary civil commitment.[5] In the latter case, the determination is made by an administrative hearing officer, under regulations of the Department of Health and Mental Hygiene, which provide in relevant part that

[a]t such hearing, in order to justify admission or retention of the patient, it must be affirmatively shown *by clear and convincing evidence* that each of the following elements exists:

(1) That the person whose admission or retention is sought is suffering from a mental disorder, and

(2) that the person whose admission or retention is sought is in need of institutional in-patient care, or treatment, and

(3) that the person whose admission or retention is sought presents a danger to his own life or safety or the life or safety of others.

Regulation 10.04.03 G (emphasis added). Defective delinquency procedures provide that whether a person is to be confined will be determined by a judge or jury, as the prisoner may prefer, with the burden of proof being the greater preponderance of the evidence. Under both categories the burden rests on the state.

Reasoning from the directive of the Supreme Court in *Murel v. Baltimore City Criminal Court,* 407 U.S. 355, 357–58, 92 S.Ct. 2091, 32 L.Ed.2d 791 (1972), that challenges to the defective delinquency law "should be considered in relation to the criteria, procedures, and treatment that the State of Maryland makes available to other

---

**2.** *Dower v. Director, Patuxent,* 396 F.Supp. 1070 (D.Md.1975). All parties to this action appealed.

**3.** Of the four petitioners in the district court, only Carl was determined to be a defective delinquent after the effective date of the involuntary civil commitment regulations which raise the standard of proof for commitment under that statute to clear and convincing evidence. As a result, Judge Kaufman determined that only Carl was denied equal protection by the lower standard of proof applied to him in his defective delinquency hearing.

**4.** The statute regulating involuntary civil commitment is found in 5B Md.Ann.Code art. 59.

**5.** At oral argument, counsel for petitioners sought to have us compare for equal protection purposes the administrative hearing under the involuntary civil commitment procedure and the determination of a majority of the medical personnel examining a prisoner that he meets the defective delinquent definition. We disagree with that analysis. Unlike the administrative proceeding under the civil commitment statute, the vote of the physician, psychiatrist and psychologist, while a prerequisite to further proceedings, does not have the legal effect of committing the individual for treatment. That is done by judicial determination. We believe that the district court correctly compared the point in each procedure at which the decision to commit is made.

persons, not 'defective delinquents,' committed for compulsory psychiatric treatment," the district court held that the use of a lower standard of proof for defective delinquency determinations violated equal protection. It is not an easy question, but we are inclined to think the obvious differences are not of constitutional magnitude.[6]

We are unable to conclude that a person is afforded less protection by a *judicial procedure* which requires proof by a *preponderance of the evidence,* but which also grants the important right of *jury trial,* than he is given by an *administrative procedure* before a single *hearing officer,* even though the state is required there to prove the issue by *clear and convincing evidence.* We are inclined to think it may be greater.

Few lawyers, we think, would give up trial by jury in favor of a higher burden of

proof before an administrative officer. The right to a jury may well more than counterbalance a difference in standard of proof.[7] Indeed, in a similar context the Supreme Court held that failure to provide "judicial review before a jury" to persons committed at the expiration of his criminal sentence, where that right was afforded to those involuntarily committed outside the criminal context, denied equal protection. *Baxstrom v. Herold,* 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966). *See also Humphrey v. Cady,* 405 U.S. 504, 512, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972). Balanced against that substantial right, we find a difference in standard of proof of indeterminate and conceivably negligible value.[8] *See Tippett v. Maryland,* 4 Cir., 436 F.2d 1153, 1158–59 (1971).[9] In this context, we hold that petitioners have failed to establish a denial of

6. Our conclusion that there is no inequality in procedural protections afforded the two groups makes it unnecessary to reach the issue of whether they are distinctive groups with differing characteristics (*Davis v. Director, Patuxent Institution,* No. 478 (Md.Ct.Spec.App. Jan. 27, 1976)) and whether the distinction bears "some relevance to the purpose for which the classification is made." (*Baxstrom v. Herold,* 383 U.S. 107, 111, 86 S.Ct. 760, 763, 15 L.Ed.2d 620 (1966).)

7. Perhaps the best known statement of the merits of jury determination over that of a judge is expressed in the following quotation from *Sioux City & P. R. R. v. Stout,* 84 U.S. (17 Wall.) 657, 664, 21 L.Ed. 745 (1874):

   Twelve men of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer; these sit together, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion. This average judgment thus given it is the great effort of the law to obtain. It is assumed that twelve men know more of the common affairs of life than does one man; that they can draw wiser and safer conclusions from admitted facts thus occurring than can a single judge.

   We know of no reason why this difference should be less significant when the comparison is made between the jury and an administrative hearing officer.

8. By suggesting that the different standard of proof may be of insignificant practical importance, we do not intend to take issue with the analysis that the standard of proof is important as a reflection of society's judgment that where a person's liberty is at issue a real effort should be made to insure that he does not bear the risk of an erroneous decision. *See In re Winship,* 397 U.S. 358, 371–72, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (Harlan, J., concurring); *United States ex rel. Stachulak v. Coughlin,* 520 F.2d 931, 936–37 (7th Cir. 1975). However, in evaluating whether two procedures, which differ in numerous respects, provide unequal procedural protections, we believe the analysis must move beyond an examination which is in essence exclusively based on theory and principle and should instead attempt an actual weighing of differences. From this perspective, we are not at all certain that, as to the issues involved in deciding if an individual is a defective delinquent under the statutory definition, a difference in the burden of proof would have any effect at all.

9. *Tippett* represented our second examination of the Patuxent "experiment." In *Sas v. Maryland,* 334 F.2d 506 (4th Cir. 1964) (Bell, J.), this court concluded that the defective delinquency statute was facially constitutional. On remand, the district court, after extensive examination, held that it was also being constitutionally applied. *Sas v. Maryland,* 295 F.Supp. 389 (D.Md.1969) (Watkins, J.). We affirmed. *Tippett, supra* (Haynsworth, C. J., Sobeloff, J., concurring and dissenting). And ultimately the Supreme Court dismissed the writ of certiorari as improvidently granted. *Murel, supra.*

the equal protection of the laws.[10] "[T]he Equal Protection Clause does not require absolute equality or precisely equal advantages." *San Antonio School District v. Rodriguez,* 411 U.S. 1, 24, 93 S.Ct. 1278, 1291, 36 L.Ed.2d 16 (1973).

## II.

Judge Kaufman held that our decision in *Tippett, supra,* effectively determined all due process claims adversely to petitioners' position. We agree. But we reiterate that nothing in this decision is intended to preclude reexamination of these claims "if later experience should show serious unfairness in the administration of the Act." *Tippett, supra* at 1158 n. 18.

## III.

Because the district court granted Appellant Carl relief under his equal protection claim, it did not consider his contention that the evidence introduced against him at the defective delinquency hearing was insufficient to warrant his confinement under that statute. *Dower v. Director, Patuxent,* 396 F.Supp. 1070, 1073 n. 5 (D.Md.1975). We remand for consideration of that claim.

*AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.*

**10.** Leaving aside the difference in standards of proof and nature of the adjudicatory body (judicial v. administrative), the Maryland Court of Special Appeals made the following compari-

son between the procedural protections provided by defective delinquency and involuntary civil commitment statutes and regulations:

| [Defective Delinquency] | [Involuntary Civil Commitment] |
| --- | --- |
| | Mental Health Regulation |
| Article 31B | 10.04.03 Pursuant to Article 59 |
| Right of discovery. | Not provided. |
| Entitled to examination by psychiatrist of own choosing at State expense. | Not provided. |
| Criminal convictions, court referral for examination and evaluation; by psychiatrist, medical doctor and psychologist; conclusion of majority of experts as to defective delinquency. | Certification of two medical doctors. |

*Bush v. Director, Patuxent Institution,* 22 Md. App. 353, 362, 324 A.2d 162, 168 (1974), *cert. denied,* 272 Md. 745 (1974). We do not read

the district court's opinion in *Dower, supra,* to dispute the accuracy of that analysis.