Roy Kirk FRENCH, III, on behalf of
himself and all other persons
similarly situated, Plaintiff,

v.

The Honorable A. Eugene BLACKBURN,
Clerk of Court of the Twenty-First Judi-
cial District of the State of North Caroli-
na, as representative of a class of defend-
ants similarly situated, Defendant.

No. C–76–52–WS.

United States District Court,
M. D. North Carolina,
Winston-Salem Division.

March 31, 1977.

Legal Aid Society of Forsyth County, Winston-Salem, N. C., by Bertram Ervin Brown, II, Winston-Salem, N. C. (Gerald C. Kell, Winston-Salem, N. C., on brief, for plaintiff.

Isaac T. Avery, III, Associate Atty. Gen., N. C. Dept. of Justice, Raleigh, N. C., for defendant.

North Carolina Civil Liberties Union Legal Foundation, Inc. by Norman B. Smith, Greensboro, N. C., and Barry Nakell, Chapel Hill, N. C., as amicus curiae.

Before CRAVEN, Circuit Judge, GORDON, Chief District Judge, and WARD, District Judge.

## OPINION OF THE COURT

### HIRAM H. WARD, District Judge.

This is an action for declaratory and injunctive relief to declare unconstitutional and to permanently enjoin the enforcement of the North Carolina involuntary commitment procedure set forth in Article 5A of Chapter 122 of the North Carolina General Statutes. Since the complaint draws into question the constitutionality of a state statute, a three-judge court was convened pursuant to 28 U.S.C. §§ 2281 and 2284. The facts, having been established by the pleadings and stipulations, are without material dispute, and the parties have filed cross motions for summary judgment under Rule 56, Federal Rules of Civil Procedure.

The plaintiff, Roy Kirk French, III, has been subjected to the proceedings under the statute on two separate occasions. The defendant, A. Eugene Blackburn, is sued in his official capacity as the Clerk of Superior Court for the Twenty-First Judicial District of North Carolina.[1]

Proceeding under N.C.G.S. § 122–58.3, the plaintiff's mother, on January 19, 1976, filed a sworn petition which provided the basis for a finding by the assistant clerk of superior court that there were reasonable grounds to believe that the facts alleged in the petition were true and that the plaintiff was probably mentally ill or an inebriate and imminently dangerous to himself or others. The assistant clerk then issued a custody order under N.C.G.S. § 122–58.3(b) and a notice of the hearing for involuntary commitment under N.C.G.S. § 122–58.5.

Pursuant to N.C.G.S. § 122–58.4, the plaintiff was, on the same date, taken into custody and transported to Reynolds Health Center, Winston-Salem, North Carolina, and there examined by a qualified physician who found him to be mentally ill or an inebriate and imminently dangerous to himself or others and who therefore recommended that he be hospitalized. The plaintiff was confined to the Community Health Center of Reynolds Memorial Hospital from January 19, 1976, to the time of the hearing on January 28, 1976. The hearing resulted in the release of the plaintiff, it being found by the presiding judge that although the plaintiff may have been mentally ill or inebriate, that it had not been shown that he was imminently dangerous to himself or others.[2]

The foregoing procedures resulted in this sweeping attack on the North Carolina involuntary commitment procedures.[3] The plaintiff contends that the procedures violate the due process clauses of the fifth and fourteenth amendments due to: (1) the fail-

1. The plaintiff seeks to prosecute this action on behalf of himself and others similarly situated and against a class of defendants composed of all of the Clerks of Superior Court in North Carolina pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. This action is an attack on a statute of state-wide application and the relief, if granted, would by its very nature apply to all persons similarly situated with the named parties to this action. If the statutes in question are held unconstitutional, we have no reason to believe that the appropriate North Carolina authorities would do anything else but follow the decisions of this Court. We, therefore, perceive no reason to certify this action as a class action under Rule 23(c) of the Federal Rules of Civil Procedure. *Ihrke v. Northern States Power Co.*, 459 F.2d 566 (8th Cir. 1972); *cf. Turner v. Blackburn*, 389 F.Supp. 1250 (W.D.N.C.1975). *See also United Farmworkers of Florida Housing*

*Project, Inc. v. City of Delray Beach, Florida*, 493 F.2d 799 (5th Cir. 1974); *Hatfield v. Williams*, 64 F.R.D. 71 (N.D.Iowa 1974).

2. By a second supplemental complaint, the plaintiff indicates that he was again subjected to confinement in a mental health facility, based on a petition by his father, from January 31, 1977, until the date of another hearing on February 9, 1977.

3. The defendant argues that this case is moot since the plaintiff is not confined, the hearings for his commitment having been terminated in his favor. We find that the case is not moot as the issues may be said to be "capable of repetition yet evading review." *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). The facts here satisfy the recently articulated two-pronged test of *Weinstein v. Bradford*, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975), as

ure to provide a probable cause hearing within 48 hours of the initial custody of a respondent in the involuntary commitment proceedings; (2) the type of notice of the hearing which is given to a respondent; (3) the ability of counsel to waive, with the court's consent, the presence of the respondent at the hearing; (4) the failure to require that the respondent be advised of his right against self-incrimination; and (5) the failure to provide for proof beyond a reasonable doubt based upon a recent overt act, threat, or attempt. The plaintiff further argues that his right to equal protection of the laws has been denied since he is not entitled to a jury trial whereas such is available to those persons subjected to lunacy proceedings under N.C.G.S. § 35–2.[4]

We find that this broadside attack on the North Carolina statutory procedures for involuntary commitment is without merit and will, therefore, grant the defendant's motion for summary judgment.[5]

The Court is of the general opinion that the North Carolina General Assembly has enacted an excellent legislative scheme which adequately protects the interests of all who may be involved in an involuntary commitment proceeding. We perceive no reason to hold the statutory provisions un-

constitutional. There is no doubt that the liberty interest of a person subjected to such proceedings is great and is an interest which has long been protected and to which the state and this Court are obligated to give great deference. However, we are presented with the concept of "fundamental fairness." It is the opinion of this Court that that concept is fully realized by the statutory procedure involved. There are two humanitarian purposes of the involuntary commitment proceedings. Fundamentally, the state is attempting to temporarily withdraw from society those persons whose mental state is such that their presence may pose a danger to society or to themselves. Secondly, the state is providing treatment to those individuals who may not otherwise have the wisdom or the wherewithal to seek it themselves. We are, therefore, examining a hybrid proceeding which although involves a deprivation of liberty, the very purpose of that deprivation is not solely to protect society but also has as a purpose the protection, treatment, and aid of an individual who cannot or will not protect himself.[6] We find that in balancing these interests, the North Carolina statutes for involuntary commitment strike a fair and equitable balance and do not offend the

(1) the issues presented here cannot be fully litigated prior to the cessation of the involuntary commitment proceedings at the statutory hearing since that hearing is generally held nine days after custody is obtained and (2) due to the plaintiff's history, there is a reasonable expectation that he would be subjected to the same action again, as is demonstrated by the plaintiff's second supplemental complaint. *See* note 2, *supra*.

4. By stipulation, the plaintiff dismissed his allegation that the failure to provide a jury trial in involuntary commitment violates the due process clause of the fifth and fourteenth amendments.

5. The defendant has urged this Court to abstain. We decline to do so. Unlike the situations in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), and *Lynch v. Snepp*, 472 F.2d 769 (4th Cir. 1973), federal interference with the state judicial process is not present. There is no commitment proceeding pending in state court against this plaintiff and considerations

of equity and comity are absent. We likewise find the abstention doctrine of *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), inapplicable as it is firmly established that abstention is not proper where the statute in question is not susceptible to two interpretations. Where the statute which is attacked is clear and unambiguous on its face and is attacked as unconstitutional on its face, abstention is improper. *Reetz v. Bozanich*, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970); *Zwickler v. Koota*, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); *McNeese v. Board of Education*, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963).

6. Although the respondent is taken into "custody," the "confinement" is only in a place where examination and treatment are available. Under N.C.G.S. § 122–58.4(a), it is specifically provided that detention shall not be in a jail or other penal facility. Pursuant to N.C.G.S. § 122–58.6(c) when the respondent is awaiting the district court hearing, medication and treatment are authorized.

constitutional standards of due process of the law.

## I. *Probable Cause Hearing*

The plaintiff asserts that a probable cause hearing should be held within forty-eight hours after the respondent in an involuntary commitment proceeding is taken into custody to be examined by a qualified physician. The statutory procedure of N.C. G.S. § 122–58.7 currently provides only for a final hearing on commitment within ten days after his custody unless the respondent is given a continuance which may be for up to five days at a time.

Every court which has addressed this issue has held that due process demands that some sort of a hearing be held within a reasonable time after confinement or custody. These same courts vary as to the time in which such a hearing must take place.[7] The issue before this Court should not be phrased, nor should it be resolved, in terms of required days, hours, or minutes, but should rather turn on the basis of the interests involved and fundamental fairness. The due process clause does not deal in magic numbers, but fundamental fairness.

 We are of the opinion that the provision of N.C.G.S. § 122–58.7 which calls for a hearing within ten days of the respondent's custody is not unconstitutional. During this time period the respondent is receiving treatment, *Id.,* § 122–58.6, which may not only aid his mental health, but which also may be necessary to an adequate and informed hearing on the necessity of his commitment. The nature of the confinement itself is limited to the humanitarian purposes of the proceedings as by the very terms of the statute, custody may not be accomplished in a jail or other penal facility but in an institution where treatment and medication are available. *Id.,* § 122–58.4(a). The ten-day period appears even more reasonable in light of the additional procedural safeguards afforded a respondent, which, among other things, gives the respondent at least two opportunities to be released prior to the hearing based upon medical examinations and the findings of the qualified examining physician.[8] In light of the fact that the inquiry throughout the proceedings is aimed at the respondent's mental health, this Court is very reluctant to substitute another judgment in lieu of the legislature's deference to qualified medical opinion at these initial stages of the involuntary commitment proceedings.

In addition to these considerations, the Court is very much persuaded by the rea-

---

**7.** *In re Barnard,* 147 U.S.App.D.C. 302, 455 F.2d 1370 (1971) (7 days); *Doremus v. Farrell,* 407 F.Supp. 509 (D.Neb.1975) (5 days); *Bartley v. Kremens,* 402 F.Supp. 1039 (E.D.Pa.1975), *prob. juris. noted,* 424 U.S. 964, 96 S.Ct. 1457, 47 L.Ed.2d 731 (1975) (72 hours); *Bell v. Wayne County General Hospital,* 384 F.Supp. 1085 (E.D.Mich.1974) (5 days); *Lynch v. Baxley,* 386 F.Supp. 378 (M.D.Ala.1974) (7 days); *Lessard v. Schmidt,* 349 F.Supp. 1078 (E.D.Wis. 1972), *vacated and remanded,* 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974), *on remand,* 379 F.Supp. 1376 (E.D.Wis.1974), *vacated and remanded,* 421 U.S. 957, 95 S.Ct. 1943, 44 L.Ed.2d 445 (1975), *on remand,* 413 F.Supp. 1318 (E.D.Wis.1976) (48 hours).

**8.** The custody order itself cannot be issued until the clerk or magistrate finds that there are "reasonable grounds to believe that the facts alleged in the affidavit are true and that the respondent is probably mentally ill or inebriate and imminently dangerous to himself or others . . . ." N.C.G.S. § 122–58.3(b). Within for-ty-eight hours, the respondent is then taken to a qualified physician who must, within another twenty-four hours, examine the respondent. *Id.* §§ 122–58.4(a), (c). The statute then provides that if the physician finds the respondent not mentally ill or inebriate or not imminently dangerous to himself or others, he shall be released and the proceedings terminated. *Id.* § 122–58.4(c). If the physician finds to the contrary, then the respondent is taken to a mental facility for treatment, observation, and further examination. *Id.* §§ 122–58.4(c), –58.6. Within another twenty-four hours, the respondent is there examined by a qualified physician who will release him pending the hearing if it is found that he is not mentally ill or inebriate or is not imminently dangerous to himself or others. *Id.* § 122–58.6(a). Therefore, within a time period of ninety-six hours after having been taken into custody, the respondent is examined by two qualified physicians either of which examinations may result in his release.

soning of *Coll v. Hyland,* 411 F.Supp. 905 (D.N.J.1976), which held that a hearing within twenty days was constitutionally permissible. The *Cole* opinion in turn relies heavily on *Logan v. Arafeh,* 346 F.Supp. 1265 (D.Conn.1972), *aff'd sub nom., Briggs v. Arafeh,* 411 U.S. 911, 93 S.Ct. 1556, 36 L.Ed.2d 304 (1973), in which a three-judge court ruled that confinement on the basis of a physician's findings for a period of forty-five days pending a hearing was not unreasonably long and did not constitute a denial of due process. This opinion was summarily affirmed by the Supreme Court and is, therefore, binding precedent under *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975). Since the Supreme Court has found that a forty-five day confinement pending a hearing is not unreasonable, we find that the North Carolina ten-day custody period prior to a full adversary hearing does not constitute a denial of due process.

## II. *Notice*

N.C.G.S. § 122–58.5 states:

Upon receipt of a qualified physician's finding . . . the clerk of superior court shall . . . calendar the matter for hearing, and notify the respondent and counsel of the time and place of the hearing. Notice must be given at least 48 hours in advance, unless waived by counsel for the respondent.

Plaintiff contends that the notice provision is constitutionally deficient in that it does not indicate a basis of the detention, does not set forth the standard of proof required at the hearing, does not inform him of a right to a jury trial, and does not indicate the names of the witnesses and/or physicians who will testify at the hearing in favor of commitment and the substance of their testimony. We find these assertions to be of little merit.

Due process requires that the notice of a hearing be appropriate to the occasion and reasonably calculated to inform the person to whom it is directed of the nature of the proceedings. *Mullane v. Central Hanover Bank & Trust Co.,* 339

U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The concept of due process is not a static one and it does not mandate particular forms of procedure. *See, e. g., Mitchell v. W. T. Grant Co.,* 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974). As stated by the Supreme Court in *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S at 314, 70 S.Ct. at 657, 94 L.Ed. at 873:

An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections. [Citations omitted] The notice must be of such nature as reasonably to convey the required information, [citation omitted], and it must afford a reasonable time for those interested to make their appearance, [citations omitted]. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met, the constitutional requirements are satisfied.

The statute here in question uses the terms "notify" and "notice." There can be little doubt that these terms were used to carry the full panoply of due process notice mandated by the law of the land. We hold that when the legislature used the term "notice" it means that notice as is required by due process and, therefore, conclude that the statute is constitutional on its face.

The notice form used by the defendant to inform the plaintiff of the proceedings against him is entirely adequate. It stated not only the time and place of the hearing but also notified him: (1) of the purpose of the hearing; (2) the right to counsel; (3) that he would be given the opportunity to present evidence at the hearing; and (4) that the presiding judge would then determine whether he should be released, be committed for up to ninety days, or undergo outpatient treatment.

In light of the nature of the proceedings, we find that this procedure is reasonably calculated to inform the respondent in an involuntary commitment pro-

ceeding of the nature and purpose of the hearing and, therefore, is not constitutionally infirm. We can find no constitutional mandate to notify the respondent of the burden of proof or to serve upon him a list of witnesses and the substance of their proposed testimony. Such is not even required in a criminal proceeding. *See Weatherford v. Bursey,* —— U.S. ——, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). Since there is no right to a jury trial in such proceedings,[9] the state is not required to give notice of such. The notice itself states that the basis of the detention is due to the fact that it is alleged that he is a proper subject for commitment.[10]

█ It is also constitutionally mandated that the notice be given sufficiently in advance of the proceedings to provide a reasonable opportunity to prepare. The statute states that at the minimum the notice should be served at least 48 hours in advance of the hearing.[11] We find this time period constitutionally adequate to allow for sufficient preparation, especially in light of the fact that continuances may be granted, N.C.G.S. § 122–58.7(a), which will prevent any prejudice because of insufficient time to prepare.

We therefore, conclude that the notice provision of N.C.G.S. § 122–58.5 is constitutionally sufficient on its face and as applied in the case before us.

### III. Waiver of the Presence of Respondent at the Hearing

█ N.C.G.S. § 122–58.7(d) provides that: "With the consent of the court, counsel may in writing waive the presence of the respondent." Plaintiff has asserted that the waiver provision violates due process, stating that respondents have an "unwaiverable" right to be present.[12]

All courts which have addressed this issue have held that the presence of one subjected to an involuntary commitment hearing could be waived or excluded. *See, e. g., Bartley v. Kremens,* 402 F.Supp. 1039 (E.D. Pa.1975), *prob. juris. noted,* 424 U.S. 964, 96 S.Ct. 1457, 47 L.Ed.2d 731 (1975); *Bell v. Wayne County General Hospital,* 384 F.Supp. 1085 (E.D.Mich.1974); *Doremus v. Farrell,* 407 F.Supp. 509 (D.Neb.1975); *Lynch v. Baxley,* 386 F.Supp. 378 (M.D.Ala. 1974); *Stamus v. Leonhardt,* 414 F.Supp. 439 (S.D.Iowa 1976).

The plaintiff, relying in part on the above-cited authority, asserts that the statute violates due process since there are no explicit standards for waiver set forth therein. We cannot agree with this conclusion as it assumes that a lawyer will not act in the best interests of his client. In light of the very nature of the lawyer-client relationship and in light of the ethical obligation of the lawyer to act for his client's best

---

**9.** See the discussion of the plaintiff's equal protection claim, *infra.*

**10.** At first blush it would appear that it might be better to serve the respondent with a copy of the petition or affidavit forming the basis of his custody. This would parallel the service of a copy of the complaint in a traditional civil action and a copy of the indictment or information in a criminal proceeding. However, this Court does not say that such is constitutionally mandated here in light of the nature of the proceedings, the subject matter thereof, and the parties thereto. As was the case here, the petitions may have been filed by members of the respondent's family and service of such might possibly cause more harm to such a respondent than nonservice. The fact that such is not served does not, in this Court's opinion, violate the concept of fundamental fairness.

**11.** On both occasions when the plaintiff was subjected to the procedure he was given notice some nine days prior to the date of the hearing, as it was given on the same day that he was taken into custody.

**12.** The right to be present at the hearing cannot be said to be "unwaiverable" as even in criminal proceedings one's right to confrontation can be waived by conduct, *Illinois v. Allen,* 397 U.S. 337, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970), or by consent such as through absence, *Taylor v. United States,* 414 U.S. 17, 94 S.Ct. 194, 38 L.Ed.2d 174 (1973). There is no doubt, therefore, that the right to be present can be waived; the real issue is whether the North Carolina waiver provisions are sufficient to comport with due process.

interests,[13] we cannot adopt the premise that a lawyer would waive his client's presence other than when it would be to the client's own benefit due to his mental or physical condition or for some other valid reason. Nor can we assume that a court would consent to such a waiver without some legitimate reason being presented to it. To assume otherwise would be to suggest that the court and the advocate somehow conspire to deprive the respondent of his constitutional rights in violation of the very ethics and responsibilities of their respective positions.

The plaintiff quotes the following passage from *Suzuki v. Quisenberry*, 411 F.Supp. 1113, 1130 (D.Hawaii 1976):

> While a committing court may exclude a respondent where his presence makes it impossible to conduct the hearing in a reasonable manner, the court may not decide in advance of hearing and based solely on the certificates of physicians that the respondent shall not be allowed to appear. Some method alternative to total exclusion must be attempted first, such as conducting the proceedings at a psychiatric facility.

The North Carolina statute provides for waiver not on the basis of physicians, but upon a written statement by counsel and with the consent of the court. We find this to be a critical difference. In addition the North Carolina statutory scheme is by its nature informal and closed to the public. N.C.G.S. § 122–58.7(g). In direct relation to the very nature of these statutory proceedings and directly bearing on the issue here presented, the legislature has already considered a reasonable alternative to total exclusion as it has provided in N.C.G.S. § 122–58.7(f) that:

> Hearings may be held in an appropriate room not used for treatment of patients at the mental health facility in which the

respondent is being treated, if it is located within the judge's judicial district, or in the judge's chambers. A hearing shall not be held in a regular courtroom, over objection of the respondent, if in the discretion of a judge, a more suitable place is available.

Therefore, one can say that a non-courtroom atmosphere is generally available as an alternative to completely waiving the presence of the respondent at the hearing. The alternative spoken of in *Suzuki* has been provided by the statute itself.

We, therefore, conclude that the waiver provision of N.C.G.S. § 122–58.7(d) does not offend due process.

## IV. *Privilege Against Self-Incrimination*

Although the fifth amendment's privilege against self-incrimination by its own terms applies only to "criminal cases," case law clearly establishes that the privilege applies to any type of proceeding be it criminal, civil, administrative, judicial, investigative, or adjudicatory where a witness may reasonably apprehend that his statements could be used in a criminal proceeding or could lead to other evidence which might be so used. *In re Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

The plaintiff contends that the privilege should apply to the involuntary commitment proceedings so that no statements made by a respondent in such a proceeding to a psychiatrist could be used to commit him in the absence of a warning to the individual that they might be so used. The plaintiff heavily emphasizes the liberty interest involved and cites authority which, also emphasizing the liberty interest, apply the privilege to such proceedings.[14]

Although the liberty interest is indeed great, the mere fact that liberty may

---

13. See Canon 7 of the Code of Professional Responsibility of the North Carolina State Bar printed as Appendix VII of the North Carolina General Statutes.

14. *Suzuki v. Quisenberry*, 411 F.Supp. 1113 (D.Hawaii 1976); *Lynch v. Baxley*, 386 F.Supp. 378 (M.D.Ala.1974); *Lessard v. Schmidt*, 349

F.Supp. 1078 (E.D.Wis.1972), *vacated and remanded*, 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974), *on remand*, 379 F.Supp. 1376 (E.D. Wis.1974), *vacated and remanded*, 421 U.S. 957, 95 S.Ct. 1943, 44 L.Ed.2d 445 (1975), *on remand*, 413 F.Supp. 1318 (E.D.Wis.1976).

be at stake does not automatically invoke the privilege. *See Middendorf v. Henry*, 425 U.S. 25, 96 S.Ct. 1281, 47 L.Ed.2d 556 (1976); *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); *United States v. Albright*, 388 F.2d 719 (4th Cir. 1968).

We are of the opinion that to apply the privilege to the type of proceedings here challenged would be to destroy the valid purposes which they serve as it would make them unworkable and ineffective. *Gomes v. Gaughan*, 471 F.2d 794 (1st Cir. 1973); *Hawks v. Lazaro*, W.Va., 202 S.E.2d 109 (1974).

As was the case in *Tippett v. State of Maryland*, 436 F.2d 1153 (4th Cir. 1971), *aff'g sub nom., Sas v. State of Maryland*, 295 F.Supp. 389 (D.Md.1969), the purpose and effect of these proceedings are not the finding of facts upon which a finding of criminal guilt might be based, but treatment and, therefore, the privilege does not apply.[15] Judge Sobeloff, concurring in part and dissenting in part, in *Tippett*, 436 F.2d at 1162, made the following persuasive statement when he concluded that the privilege should not apply to proceedings under which prisoners were committed for mental treatment:

. . . the right against self-incrimination cannot be rigidly applied in Patuxent proceeding. I rest, however, not on the asserted ground that the Act is "civil" but that, because of the unusual nature of the necessary inquiries, the legitimate objectives of the legislation would be

frustrated were inmates permitted to refuse cooperation. Granting the inmate the right to silence would in many instances thwart the personal examinations and interviews considered indispensable in determining whether the prisoner is or is not a defective delinquent.

## V. Burden of Proof

The plaintiff asserts that the statutory scheme also violates due process because of its failure to provide for proof beyond a reasonable doubt. The statute, N.C.G.S. § 122–58.7(i), provides that: "To support a commitment order, the court is required to find, by clear, cogent, and convincing evidence, that the respondent is mentally ill or inebriate, and imminently dangerous to himself or others." Although the case law is greatly divided on this issue,[16] we are of the opinion that in light of the precedent in the Fourth Circuit and in light of the nature of the involuntary commitment proceedings, that the legislature's choice of the standard of proof does not offend due process.

It should initially be noted that the resolution of this issue does not turn on whether the proceeding is classified as "civil" or "criminal," *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), but rather on the basis of the competing interests at stake and the risk which society is willing to assume for an erroneous decision to commit or an erroneous decision not to commit.[17]

---

15. *Tippett* was more recently approved in *Dower v. Boslow*, 539 F.2d 969 (4th Cir. 1976), *aff'g in part and reversing in part*, 396 F.Supp. 1070 (D.Md.1975).

16. The courts adopting a "clear and convincing" or "clear, unequivocal, and convincing," or "clear, cogent, and convincing" standard of proof are: *Stamus v. Leonhardt*, 414 F.Supp. 439 (S.D.Iowa 1976); *Bartley v. Kremens*, 402 F.Supp. 1039 (E.D.Pa.1975), *prob. juris. noted*, 424 U.S. 964, 96 S.Ct. 1457, 47 L.Ed.2d 731 (1975); *Doremus v. Farrell*, 407 F.Supp. 509 (D.Neb.1975); *Dixon v. Attorney General of Pennsylvania*, 325 F.Supp. 966 (M.D.Pa.1971); *Hawks v. Lazaro*, W.Va., 202 S.E.2d 109 (1974). The courts adopting a standard of proof of

beyond a reasonable doubt are: *United States ex rel. Stachulak v. Coughlin*, 520 F.2d 931 (7th Cir. 1975); *In re Ballay*, 157 U.S.App.D.C. 59, 482 F.2d 648 (1973); *Suzuki v. Quisenberry*, 411 F.Supp. 1113 (D.Hawaii 1976); *Lessard v. Schmidt*, 349 F.Supp. 1078 (E.D.Wis.1972), *vacated and remanded*, 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974), *on remand*, 379 F.Supp. 1376 (E.D.Wis.1974), *vacated and remanded*, 421 U.S. 957, 95 S.Ct. 1943, 44 L.Ed.2d 445 (1975), *on remand*, 413 F.Supp. 1318 (E.D.Wis. 1976).

17. The mere fact that liberty may be at stake does not exact a standard of proof of beyond a reasonable doubt. The Supreme Court has adopted a clear and convincing standard in

The Fourth Circuit ruled in *Tippett v. State of Maryland*, 436 F.2d 1153 (4th Cir. 1971), and again in *Dower v. Boslow*, 539 F.2d 969 (4th Cir. 1976), that the Maryland choice of the standard of proof of a preponderance of the evidence in a proceeding to commit prisoners for treatment did not violate due process. The *Tippett* majority, 436 F.2d at 1158–59, stated:

> We might all be happier had it been stated in terms of clear and convincing proof rather than in terms of a preponderance of the evidence. . . . In any event, in the present state of our knowledge, choice of the standard of proof should be left to the state. A legislative choice of the preponderance standard, the same standard governing civil commitments of mentally ill persons who have no history of criminality, ought not to be held in violation of due process requirements when we have no firm foundation for an evaluation of the practical effects of the choice.

Indeed, the liberty interest in *Tippett* and *Dower* may be said not to be as significant as that involved here since in those instances the issue was the commitment for treatment, as opposed to a penal commitment, of persons whose liberty had already been deprived as a result of criminal proceedings. However, the involuntary commitment proceedings do not have as their sole purpose the deprivation of liberty, but also have as a significant and valid goal the treatment and aid of a person alleged to be mentally ill or inebriate and who is imminently dangerous to himself or others. The issues in such a proceeding are by their very nature not susceptible to proof of objective facts. Adoption of a standard of proof of beyond a reasonable doubt would seem to be an impossible burden. As stated by Judge Sobeloff, concurring in part and dissenting in

revocation of naturalization, *Chaunt v. United States*, 364 U.S. 350, 81 S.Ct. 147, 5 L.Ed.2d 120 (1960), in expatriation cases, *Nishikawa v. Dulles*, 356 U.S. 129, 78 S.Ct. 612, 2 L.Ed.2d 659 (1958), and in deportation proceedings, *Woodby v. Immigration Service*, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966).

part, in *Tippett*, 436 F.2d at 1165, in urging the adoption of a clear and convincing standard of proof:

> It must be recognized, however, that as to the *ultimate* issue of the inmate's dangerousness, the beyond a reasonable doubt standard may in practical operation be too onerous. After all, the ultimate issue is not as in a criminal case whether an alleged act was committed or event occurred, but the much more subjective issue of the individuals' mental and emotional character. Such a subjective judgment cannot ordinarily attain the same "state of certitude" demanded in criminal cases.

We, therefore, join those courts which have held that a standard of proof of beyond a reasonable doubt is not mandated by the due process clause, cases cited at note 15, *supra*, and hold that the North Carolina legislature's choice of proof by clear, cogent, and convincing evidence does not violate that constitutional prohibition.

## VI. *Equal Protection—Jury Trial*

A respondent in an involuntary commitment proceeding is not afforded a jury trial on the issues of whether he is mentally ill or inebriate and imminently dangerous to himself or others. North Carolina gives a jury trial to persons subjected to lunacy proceedings under N.C.G.S. § 35–2 in which a guardian is appointed to handle the affairs of one found by the jury to be mentally defective, mentally disordered, or incompetent from want of understanding to manage his own affairs. This difference in procedure is the basis for the plaintiff's claim that he has been denied the equal protection of the laws.[18]

The equal protection clause demands that the state treat alike persons

18. The plaintiff also contends that it is a denial of equal protection for N.C.G.S. § 35–3 to provide that one who is confined in a state hospital may have a guardian appointed upon the certificate of the superintendent of the hospital while one not so confined has a jury trial in order for a guardian to be appointed. The plaintiff argues, therefore, that persons confined in a facility pursuant to Article 5A of

who are similarly situated in absence of a sufficient justification for the difference in treatment. The provision is not offended if the state action affects all persons similarly situated in like manner. *See, e. g., Barbier v. Connolly*, 113 U.S. 27, 5 S.Ct. 357, 28 L.Ed. 923 (1885). As stated by Justice Frankfurter: "The Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Tigner v. Texas*, 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124, 1128 (1940). It is on this point that the plaintiff's argument falters as the state is not treating persons similarly situated differently. It is true that both the class of persons subjected to involuntary commitment proceedings and the class of persons subjected to the appointment of a guardian may have mental problems. However, it is at that point that the similarity ends. The standards and purposes of the proceedings to commit someone who is mentally ill or an inebriate and imminently dangerous to himself or others are entirely different from the standards and purposes of the appointment of a guardian to one who is found incapable of handling his own affairs. They are, therefore, not similarly situated. The authorities cited by the plaintiff, which find a denial of equal protection where the state provides for a jury trial or standards for commitment generally but does not give a jury trial or the same standards for persons to be committed on the basis of a criminal finding of guilt for a particular crime, *Humphrey v. Cady*, 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972), or after the termination of their penal sentence, *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972), are not in point. They deal with the problem where the state gives a jury trial to one class of persons to be committed but not to another class of persons to be committed. What we have here is the state giving a jury trial to those ·persons for whom a guardian is being appointed and not to those persons being involuntarily committed. We perceive no violation of the equal protection clause.

■■■■ Assuming arguendo that the classification involved did affect persons similarly situated, we are of the opinion that the difference in treatment is totally justified under the rational basis test.[19] A finding that a person is not capable of handling his own affairs so as to require appointment of a guardian seems to us more susceptible to the practical wisdom of a jury than determining whether a person is mentally ill or an inebriate and dangerous to himself or others. The latter finding may not unreasonably have been thought by the legislature to be beyond the competency of a jury. Predicting human behavior is certainly no task for the psychologically uninformed, and it is easier for a psychiatrist to inform one judge than 12 jurors. Also of great concern is the fact that the proceedings for involuntary commitment are informal in their nature and are closed to the public. N.C.G.S. § 122–58.7(g). This privacy and informality, which are obviously legislated for the purpose of protecting one subjected to the proceedings from suffering additional trauma,

Chapter 122 of the General Statutes would also be subjected to the appointment of a guardian upon the mere certificate of the superintendent of such facility whereas those not so committed would have a jury make that determination. Assuming arguendo that such is the case, that contention goes to the constitutionality of N.C. G.S. § 35–3, not Article 5A of Chapter 122 of the North Carolina General Statutes.

**19.** The rational basis test applies in light of the fact that there is not a fundamental right to a jury trial in civil commitment proceedings. *See, e. g., Doremus v. Farrell*, 407 F.Supp. 509 (D.Neb.1975); *Lynch v. Baxley*, 386 F.Supp. 378 (M.D.Ala.1974). The mere fact that liberty is at stake does not invoke the right to a jury

trial. *See, e. g., Baldwin v. New York*, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970); *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). The Supreme Court has analyzed an equal protection claim in the context of a state granting a jury trial for persons subjected to civil commitment generally but not for the mental commitment of persons charged with crimes or in prisons, in terms of a rational basis test. *See Humphrey v. Cady*, 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972); *Jackson v. Indiana*, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972); *Baxstrom v. Harold*, 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966).

would be totally lost if a jury were present. Indeed the persons subjected to such a proceeding may not be capable of dealing with a full-blown adversary process. We find these purposes and justifications not only sufficient to pass constitutional muster, but laudible, and conclude that the failure to provide a jury trial in involuntary commitment proceedings does not violate the equal protection clause.

## VII. *Conclusion*

For the above-related reasons, this Court finds that Article 5A of Chapter 122 of the North Carolina General Statutes is constitutional. In accordance with the foregoing it is ORDERED that: (1) the motion of the defendant for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, be, and the same hereby is, GRANTED; (2) the motion of the plaintiff for summary judgment pursuant to Rule 56, Federal Rules of Civil Procedure, be, and the same hereby is, DENIED; and (3) the motion of the plaintiff to certify this action as a class action under Rule 23(b)(2), Federal Rules of Civil Procedure, be, and the same hereby is, DENIED.

A judgment shall be entered accordingly.