420 S.E.2d 682 (1992)
107 N.C. App. 448
In the Matter of Timothy BELK, Respondent.
WSOC TELEVISION, INC., Intervenor/Petitioner,
v.
STATE of North Carolina, ex rel. ATTORNEY GENERAL; Charlotte-Mecklenburg Hospital Authority; the Children's Law Center; Mecklenburg County Area Mental Health, Developmental Disabilities and Substance Abuse Authority; and Mental Health Association of Mecklenburg County, Inc., Intervenors/Respondents.
No. 9126DC517.
Court of Appeals of North Carolina.
September 15, 1992.
*683 Atty. Gen. Lacy H. Thornburg by Sp. Deputy Atty. Gen. David M. Parker and Associate Atty. Gen. Michelle B. McPherson, Raleigh, for intervenor, respondent-appellee State.
Children's Law Center by Anne Morgan Sanders, Helen R. Bradford, and Marjorie L. Foley, Charlotte, for intervenor, respondent-appellee Children's Law Center.
Waggoner, Hamrick, Hasty, Monteith, Kratt and McDonnell by John H. Hasty, Charlotte, for intervenor, petitioner-appellant.
WYNN, Judge.
This appeal arises as the result of action taken by WSOC, a television station in Charlotte, North Carolina, to attend the commitment hearing of Timothy Belk ("Belk").
Apparently, after Belk began exhibiting violent and hallucinatory behavior, family members asked the Shiloh True Light Church of Mint Hill, North Carolina ("Church") for help in controlling him. The Church responded by confining Belk in a wire cage. Subsequently, several reporters with WSOC investigated and reported in a television broadcast the story about Belk. Upon returning to do a follow-up story, they found that Belk had been taken from the Church and was being held at the Mecklenburg County Mental Health Center.
Belk's family members, upset that Belk had been taken by Mecklenburg County officials against his will, informed WSOC on or about 7 September 1990, that a hearing was to be held in Mecklenburg County District Court on 12 September 1990, to determine whether Belk should be committed to a state hospital. On 11 September 1990, the trial court allowed WSOC, the Children's Law Center, Charlotte Mecklenburg Hospital and the Mecklenburg County Area Mental Health Authority to intervene for the purpose of being heard on a motion in the cause on the question of whether the hearing and Belk's medical records should be open to the public. On 22 February 1991, the Honorable L. Stanley Brown denied the motion to open the proceedings to the public. WSOC appeals from this determination.
The appellant, WSOC, assigns error to the trial court's determination that the hearing and medical records of Belk should remain closed to the public. Appellant argues that N.C.Gen.Stat. §§ 122C-251 to -271 (1989), which provide for involuntary commitment proceedings, are unconstitutional as they violate the right of public access to the courts as guaranteed by the First and Fourteenth Amendments of the United States Constitution and the North Carolina Constitution.
In challenging the constitutionality of a statute, the burden of proof lies with the challenger. Smith v. Wilkins, 75 N.C.App. 483, 485, 331 S.E.2d 159, 161 (1985). Furthermore, statutes must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears. Vinson v. Chappell, 3 N.C.App. 348, 350, 164 S.E.2d 631, 632 (1968), aff'd, 275 N.C. 234, 166 S.E.2d 686 (1969).

United States Constitution
Initially, the appellant contends the First and Fourteenth amendments of the United States Constitution create a presumption that court proceedings should be open. In support of this contention, it cites Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) and Globe Newspaper Co. v. Superior Court, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982). Both cases are distinguishable from the case at hand.
In Richmond, the United States Supreme Court considered the narrow issue *684 of whether the public and press had a constitutional right to attend criminal trials. Although the Court held the public had a guaranteed right under the First and Fourteenth Amendment of the United States Constitution to attend a criminal trial, the Court specifically noted that the right of the public and the press to attend civil trials was not before the Court and as such, its holding was only applicable to a criminal proceeding. Richmond, 448 U.S. at 580 n. 17, 100 S.Ct. at 2829 n. 17, 65 L.Ed.2d at 992 n. 17. Since a commitment hearing is a civil rather than a criminal proceeding, In re Underwood, 38 N.C.App. 344, 347, 247 S.E.2d 778, 780 (1978), Richmond is not controlling authority in this case.
Globe is cited by the appellant for the proposition that "the state of North Carolina may [not] mandatorily close an entire category of judicial proceedings without conducting a case by case analysis of the requirements for closure as mandated by the Supreme Court of the United States." In Globe, the Court held that a state statute which requires the mandatory exclusion of the public from the courtroom during the testimony of a minor victim in a sex-offense trial violated the First Amendment. 457 U.S. at 602, 102 S.Ct. at 2617-18, 73 L.Ed.2d at 254. However, the application of Globe is as limited as the application of Richmond since the Court did not address the exclusion of the public from a civil trial. Indeed, Justice O'Connor emphasizing this limitation wrote in a concurring opinion that:
Richmond Newspapers rests upon our long history of open criminal trials and the special value, for both public and accused, of that openness. As the plurality opinion in Richmond Newspapers stresses, "it would be difficult to single out any aspect of government of higher concern and importance to the people than the manner in which criminal trials are conducted." Thus, I interpret neither Richmond Newspapers nor the Court's decision today to carry any implications outside the context of criminal trials.
Globe, 457 U.S. at 611, 102 S.Ct. at 2622, 73 L.Ed.2d at 260 (O'Connor, J., concurring) (citations omitted). Like Richmond, the Globe decision is not applicable to civil commitment hearings.
The appellant nonetheless urges this Court to consider a footnote in Gannett Co. v. DePasquale, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979), to support the proposition that the First Amendment's guarantee of public access to criminal proceedings applies with equal force to civil proceedings. The footnote in Gannett acknowledges that civil trials have traditionally been open to the public. Gannett, 443 U.S. at 386 n. 15, 99 S.Ct. at 2908, n. 15, 61 L.Ed.2d at 625, n. 15. We are disinclined to make such an application in this case and therefore specifically hold that the holdings in Richmond and Globe are inapplicable to civil commitment proceedings. Moreover, North Carolina's civil commitment process can be distinguished from the traditional civil trial since prior to 1973 the commitment procedure did not require formal judicial hearings. See Robert D. Miller and Paul B. Fiddleman, Involuntary Civil Commitment in North Carolina: The Result of the 1979 Statutory Changes, 60 N.C.L.Rev. 986, 993 (1982).
We note further that the constitutionality of North Carolina's commitment statutes was ruled on by the United States District Court in French v. Blackburn, 428 F.Supp. 1351 (M.D.N.C.1977), aff'd, 443 U.S. 901, 99 S.Ct. 3091, 61 L.Ed.2d 869 (1979). In French, the plaintiff brought suit contending that the North Carolina commitment statute was unconstitutional because his hearing had not been opened to the public. The district court held that the proceedings for involuntary commitment by nature, was informal and closed to the public. "This privacy and informality, which are obviously legislated for the purpose of protecting one subjected to the proceedings from suffering additional trauma, would be totally lost if a jury were present. Indeed the persons subjected to such a proceeding may not be capable of dealing with a full-blown adversary process." Id. at 1361-62. Moreover, the district court stated that N.C.Gen.Stat. *685 § 122C has humanitarian purposes and involves a "deprivation of liberty, the very purpose of that deprivation is not solely to protect society but also has as a purpose the protection, treatment, and aid of an individual who cannot or will not protect himself." Id. at 1354. The purpose of an involuntary commitment hearing is to render a service that cannot be accomplished in a jail or other penal facility but in an institution where treatment and medication are available. Id., at 1355. Although the involuntary commitment statutes have been amended since the French decision, the old and new statutes essentially set out the same procedures for involuntary commitment, see Sumblin v. Craven County Hospital Corp., 86 N.C.App. 358, 357 S.E.2d 376 (1987). Accordingly, we find the rationale in French dispositive of this issue.

North Carolina Constitution
The appellant next argues that Article I, §§ 18 and 24 of the North Carolina Constitution support its contention that there exists a constitutional open courts presumption in all cases. Article I, § 18 states: "All courts shall be open; every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law...." This section has been interpreted as providing a guarantee "to those who suffer injury to their persons, property, or reputation, the right to seek redress therefor in the courts of this state." Bolick v. American Barmag Corp., 54 N.C.App. 589, 593, 284 S.E.2d 188, 191 (1981), modified and aff'd, 306 N.C. 364, 293 S.E.2d 415 (1982). Section 18 was considered by our Supreme Court in In re Nowell, 293 N.C. 235, 237 S.E.2d 246 (1977), wherein a district court judge was censured for accepting guilty pleas and entering judgments outside the courtroom when court was not in session and neither the defendants nor their counsel were present and without notice to the prosecutor. It was in this context that the Court observed that "[t]he trial and disposition of criminal cases is the public's business and ought to be conducted in public in open court." Id. at 249, 237 S.E.2d at 255 (citations omitted). Thus, the application of Nowell, as in the previously mentioned federal cases, was limited to the context of a criminal trial setting. We conclude that Article I, § 18 does not create a constitutional right on the part of the press and public to attend civil commitment proceedings.
The appellant next contends that Article I, § 24 supports its proposition that the public has a right to attend civil commitment proceedings. Section 24 provides, "[n]o person shall be convicted of any crime but by the unanimous verdict of a jury in open court." Section 24 is directed to an "open court" proceeding during a criminal conviction only, and in light of this clear limitation, we likewise conclude that it is not applicable to civil proceedings.

Statutory Right
Appellant next argues that N.C.Gen.Stat. §§ 7A-109, 7A-190 and 7A-191, (1989) create a presumptive right, on the part of the public, to view all records and attend commitment proceedings. Section 109 provides that, "[e]xcept as prohibited by law, these records shall be open to the inspection of the public during regular office hours, and shall include civil actions...." Sections 190 and 191 provide that the district courts shall be deemed always open for the disposition of matters, and always will be conducted in open court. North Carolina General Statutes Chapter 122C governs commitment hearings and records. N.C.Gen. Stat. § 122C-224.3(d) (1989) provides that hearings shall be closed to the public unless the attorney requests otherwise. The records from the proceedings are protected, but this protection is not absolute. Section 122C-54(d) provides:
Any individual seeking confidential information contained in the court files or the court records of a proceeding made pursuant to Article 5 of this Chapter may file a written motion in the cause setting out why the information is needed. A district court judge may issue an order to disclose the confidential information sought ... if he finds that it is in the best interest of the individual admitted *686 or committed or of the public to have the information disclosed.
Id. § 122C-54(d).
While sections 109, 190 and 191 speak generally to the right to view public records, Chapter 122C speaks specifically to the right to view records from a commitment hearing. The rules of statutory construction dictate that when two statutes concern the same subject matter they must be construed in harmony with one another. Charlotte City Coach Lines, Inc. v. Brotherhood of Railroad Trainmen, 254 N.C. 60, 68, 118 S.E.2d 37, 43 (1961). However, where one statute is specific and the other is general, the specific provision must be taken as intended to constitute an exception to the general provision, because the legislature is not to be presumed to have intended a conflict. See State ex. rel. Utilities Commission v. Lumbee River Electric Membership Corp., 275 N.C. 250, 260, 166 S.E.2d 663, 670 (1969). Inasmuch as chapter 122C addresses specifically the procedure for commitment hearings, we find that its provisions control over the general language of sections 109, 190 and 191.
Finally, in passing we note that the appellant television station sought to expose Belk to its viewing audience because it considered his mental illness, violent behavior and confinement in a wire cage to be "newsworthy". Apparently, the fragility of Belk's mental condition was not the appellant's concern in seeking to publicly air his hearing, hence its primary purpose for seeking access to the hearing and records was to be a conduit for information. While we concede that the public may have some interest in Belk's hearing, N.C.Gen.Stat. § 122C affords the mentally ill a measure of dignity by granting the trial court the discretion to deny access to those whose interest in the commitment proceedings is purely self-serving. The appellant has failed to show an explicit constitutional right of access to commitment proceedings and has presented no authority establishing that right. In absence of a plain and unmistakable constitutional violation, this Court must give deference to the legislature and follow the presumption that an act of the legislature is constitutional. State ex rel. Martin v. Preston, 325 N.C. 438, 448, 385 S.E.2d 473, 478 (1989). Therefore, the statutory limitations on public access to civil commitment proceedings and documents must be upheld. We have considered the appellant's other assignments of error and find them to be without merit. For the foregoing reasons, the decision of the trial court is,
Affirmed.
ARNOLD and LEWIS, JJ., concur.