**In re Johnnie BARNARD, Patient.**
**No. 71–1997.**

United States Court of Appeals,

District of Columbia Circuit.

Argued Dec. 16, 1971.

Decided Dec. 23, 1971.

Mr. Robert J. Golten, Washington, D. C., for appellant.

Mr. James F. Flanagan, Asst. U. S. Atty., for appellee. Mr. Thomas A. Flannery, U. S. Atty., and Messrs. John A. Terry and Lester B. Seidel, Asst. U. S. Attys., were on the pleadings for appellee.

Before WRIGHT, ROBINSON and WILKEY, Circuit Judges.

PER CURIAM:

This case came before this court 'on motions by both parties for summary disposition and appellant's request for oral argument and expedited consideration. We granted the latter requests because the legality of the continued involuntary detention of appellant Johnnie Barnard was in question. At issue is the correctness of an order issued by the District Court on November 30, 1971, which held that appellant was being legally detained under D.C. Code §§ 21–523, 21–524 (1967).

The factual background of this case is not entirely clear from the record. We do know that on November 21, 1971, an application for emergency hospitalization of appellant was prepared by Dr. Myron as an accredited officer of the District of Columbia Department of Public Health.[1] We do not know how Dr. Myron came to examine appellant and precisely what he observed that caused him to apply for appellant's admission to Saint Elizabeths as an emergency involuntary patient.

Under D.C. Code § 21–521, the person who makes application for a commitment under emergency hospitalization procedures must reveal the circumstances leading up to the application. Dr. Myron's only comments in this regard were:

Patient grossly psychotic, loose associations, delusions of persecution.

Say [*sic*] he has knife to protect himself against persecutors. Also has poison to take to kill himself and plans to buy gun. Recent hx of assaultive behavior.

Sometime that same day appellant was taken to Saint Elizabeths Hospital. There he was examined by the admitting psychiatrist who filled out a form certificate which stated that he was of the opinion that appellant showed symptoms of mental illness and was likely to injure himself or others unless immediately hospitalized. The tentative diagnosis was paranoid schizophrenia. Thereupon, under D.C. Code § 21–522 (1967), appellant was admitted to Saint Elizabeths for emergency observation and diagnosis.[2]

A person so admitted may only be detained in the hospital for 48 hours unless the hospital administrator petitions the court for an order authorizing further emergency hospitalization, which may continue for seven additional days.[3] Such a petition was filed with respect to appellant on November 24, 1971, and was granted the same day by the District Court.[4]

It is unclear exactly how and when appellant received notice of the order for additional detention issued on November 24.[5] By whatever means appellant learned of the order, it is not contested that he did not become aware of it until Sunday, November 28. Apparently he then contacted the Public Defender's Of-

---

1. D.C.Code § 21–521 (Supp. IV 1971) provides that an officer of the Department of Public Health, a person authorized to make arrests in the District of Columbia, or a physician of the person in question, who has reason to believe that a person is mentally ill and likely to injure himself or others because of it if not immediately detained, may take the person into custody without a warrant, take him to a hospital, and make application for his admission for emergency observation and diagnosis.

2. D.C.Code § 21–522 provides in pertinent part that the administrator of a public hospital shall admit and detain for purposes of emergency observation and diagnosis a person with respect to whom the application is accompanied by a certificate

of a psychiatrist on duty at the hospital stating that he has examined the person and is of the opinion that he has symptoms of mental illness and, as a result, is likely to injure himself or others unless he is immediately hospitalized.

3. D.C.Code § 21–523.

4. Under D.C.Code § 21–524 the court must either order the hospitalization continued or release an emergency patient within 24 hours of a hospital's filing of a petition pursuant to D.C.Code § 21–523.

5. The November 24, 1971 order required appellant to be notified by service of a copy of the order upon him. Appellant claims, however, that he learned accidentally of the order either from a nurse or by seeing the papers at the nurses' station on his floor.

fice which requested a hearing as provided for by D.C. Code § 21–525 (1967).

■ That hearing, which is the subject of this appeal, was held November 30.[6] Based on what transpired at the hearing and at a conference in chambers which is not a part of the record,[7] the District Judge entered an order that same day which upheld the legality of appellant's seven-day commitment at Saint Elizabeths under D.C. Code §§ 21–523, 21–524. The court found that the application for emergency hospitalization filed by Dr. Myron and the admitting psychiatrist's certificate were valid documents which, together with the concessions of counsel in chambers, formed an adequate basis for detaining appellant under these sections.

The court's order noted that:

> [N]ot only has the patient, through counsel, made no objection to the validity of the documents supporting Mr. Barnard's hospitalization; but [he] has agreed that the documents are valid and accurately reflect the patient's mental condition. The Court further notes that neither the patient nor his counsel have proffered any evidence—testimonial or documentary —that would contravene the facts contained in the papers before this Court.

Appellant's counsel urged in this court and in the District Court that the hearing provided for by D.C. Code § 21–525 should be in the nature of a "probable cause" hearing with the Government having the burden of producing some evidence to justify detaining appellant. Here the application for emergency hospitalization and the certificate of the admitting psychiatrist were all the Government presented.

■ Although these documents were primarily printed forms which contained much conclusionary language and provided only sketchy information about the particular person, they did give the opinion of two doctors that the patient was suffering from symptoms of mental illness and was likely to injure himself or others unless detained. The application also indicated that the patient had a knife and poison and planned to buy a gun. Given that neither the validity of the documents nor the accuracy of the opinions and information in the documents was contested, the District Judge had no choice but to find that there was an adequate basis for continuing appellant's hospitalization. We do think, as appellant's counsel suggested, that the Government has the initial burden of producing evidence showing probable cause justifying further detention of an involuntary mental patient. However, for the reasons stated, we believe that this burden was met in this case.

■ The Fourth Amendment provides that every person shall be free from seizure unless supported by probable cause. Usually the concept of an unreasonable seizure in violation of the Fourth Amendment is considered in the context of an arrest. However, the Fourth Amendment's prohibition is not limited to cases involving arrests. Brown v. Fauntleroy, 143 U.S.App.D.C. 116, 117, 442 F.2d 838, 839 (1971). Its purpose was and is to guarantee that no person will be deprived of his freedom without due process of law. In this case, although there was no arrest, ap-

---

6. D.C.Code § 21–525 provides that the required hearing must be held within 24 hours after request is received by the court.

7. The transcript of the District Court proceedings is very brief and offers this court little help in determining what the action of the District Court was founded upon. It appears from the transcript and from counsel's representations at oral argument that much of the substance of the argument in this case was had in chambers.

Absent a record which reflects all that occurred in the District Court, effective appellate review is precluded. In the future, conferences such as the one occurring here will be held in open court on the record, or a reporter will be present for conferences in chambers, or the judge will state for the record in the presence of counsel what was discussed and agreed upon at a conference at which no reporter was present.

pellant was taken into custody [8] and involuntarily deprived of his liberty.[9] It seems clear beyond doubt that he was "seized" within the meaning of the Fourth Amendment.

■ In the criminal law one means of assuring that a person is not in custody in violation of the Fourth Amendment is the requirement that he be brought before a judicial officer as quickly as possible to determine whether he is being detained on probable cause. Fed.R. Crim.P. 5. While the Supreme Court has not found it necessary to give a constitutional basis to this right to a preliminary hearing, its fundamental nature is clearly established.[10] This court in discussing juvenile proceedings has held that a right to a probable cause hearing is of constitutional dimensions. Brown v. Fauntleroy, *supra*, 143 U.S. App.D.C. at 117, 442 F.2d at 839. Similarly in the situation here, we believe that where a person, said to be mentally ill and dangerous, is involuntarily detained, he must be given a hearing within a reasonable time to test whether the confinement is based upon probable cause.[11] Therefore, probable cause to believe the patient should be hospitalized must be shown by the Government to justify the seven-day commitment order at the § 21–525 hearing in this case.

■ At the D.C. Code § 21–525 hearing, the Government may rely upon the papers which were before the judge who authorized the seven-day commitment under D.C. Code § 21–524. If the judge at the hearing can conclude from these statements that there is probable cause to believe the patient is mentally ill and, as a result thereof, is likely to injure himself or others if not detained, he may find the hospitalization legal unless the patient offers evidence which sufficiently rebuts the documentary evidence.

■ We recognize that the primary function of doctors is treating the sick, not testifying in court. Hence there is a rational basis for allowing the Government to make its showing of probable cause on the papers alone, without the personal testimony of the physicians. In many cases there will be no dispute about the factual recitals and diagnoses therein. To imply that the Government must offer live testimony would encourage competent conscientious counsel for the patient to "put the Government to its proof" as in a criminal case, when in truth there was no dispute about the facts and the best interests of the pa-

---

8. See D.C.Code § 21–521.

9. A patient may be detained for two days based solely upon the application for emergency hospitalization and certificate of the admitting psychiatrist, and for seven additional days if continued hospitalization is allowed by the court. D.C.Code § 21–523. If proceedings for judicial hospitalization under D.C.Code § 21–541 et *seq.* (1967) are begun while the patient is hospitalized under emergency procedures, the hospital administrator may detain him pending the resolution of these proceedings. D.C.Code § 21–528 (1967). Normally it is approximately one month before the Mental Health Commission holds its hearing, which is the first step in the judicial hospitalization proceedings. D.C.Code § 21–542. In fact, judicial commitment proceedings were initiated against appellant on December 1, 1971, and no hearing has been held.

10. *See* McNabb v. United States, 318 U.S. 332, 343–344, 63 S.Ct. 608, 87 L.Ed. 819 (1943). *See also* Coleman v. Alabama, 399 U.S. 1, 9, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1969) ; Mallory v. United States, 354 U.S. 449, 454, 77 S.Ct. 1356, 1 L.Ed. 2d 1479 (1957).

11. In In re Curry, 147 U.S.App.D.C. 28, 452 F.2d 1360 (1971), counsel for the Government put into the record statistics for several years of the number of seven-day commitments authorized and the ultimate disposition of these cases. Of 1,702 persons whose seven-day detentions were authorized in 1970, only 331 were eventually judicially committed. This indicates the need to insure that prompt procedures exist for testing the appropriateness of detention. Judge Tamm, noting the high rate of dismissals in juvenile proceedings, made an analogous remark about the need for promptness in his concurrence in Brown v. Fauntleroy, 143 U.S.App.D.C. 116, 121, 442 F.2d 838, 843 (1971).

tient-client lay in accepting the doctors' tentative diagnoses and continuing the hospitalization for observation. Only if counsel for the patient makes a proffer of contrary proof or challenges the accuracy of the facts or diagnoses in the papers should the Government be compelled to offer live testimony.

It should be clear, however, that commitment papers containing mere conclusionary statements will not suffice to provide probable cause at the § 21–525 hearing.[12] The conclusions in the papers must be sufficiently detailed and supported by facts to allow the court to perform its function under § 21–525 of passing on their credibility in determining whether probable cause exists for continued incarceration.[13] Such evidence is also required to permit this court to perform its statutory review function.

If the patient wants to challenge the evidence in the documents, he may subpoena those persons who prepared the documents which caused him to be committed as well as other persons. He may take the witness stand in his own behalf and submit doctors' reports and affidavits which support his case. If he does present such reports and affidavits the Government may subpoena the persons making them. Also, when a hearing is requested, the examination which is required within the first two days of the seven-day order [14] shall be made and the results presented at the hearing. After all the evidence has been presented, the judge shall determine from the whole record whether there is probable cause to detain the patient and shall state the reasons for his finding on the record or in writing.

Some additional points must be made concerning notice and counsel. The order which initially authorized appellant's seven-day commitment required that he be served with a copy and informed of his right to a hearing under § 21–525. This service and notice is required in all cases. Here, however, the patient did not learn of the order until four days after its issuance. We think quicker notice is needed and can be given without imposing a great burden on the Government. Notice of the signing of the order under § 21–524 authorizing the seven-day commitment should be given within 24 hours so that a hearing may be had within the first two days of the seven-day period.[15] When personal freedom is at issue due process at least demands that a person's legal status be determined at the earliest possible time.

D.C. Code § 21–543 specifies that "[t]he alleged mentally ill person shall be represented by counsel in any proceeding before the * * * court," and D.C. Code § 2–2222(a) (3) (Supp. IV 1971) authorizes the District of Columbia Public Defender Service to represent any indigent person subject to the 1964 Hospitalization of the Mentally Ill Act. Beyond that, we think, there is a constitutional right to counsel at this

---

12. The statutory scheme requires throughout that detention be based not only upon a finding of mental illness or symptoms thereof, but also on a finding that as a result of the illness the person is dangerous to himself or others. While doctors' opinions when properly explicated and related to the facts in question are entitled to great weight, courts are frequently called upon and are quite competent to make their own findings from testimony and evidence as to dangerousness. *See, e. g.,* the discussion of the court's role regarding the question of dangerousness in Sexual Psychopath Act commitments in Cross v. Harris, 135 U.S.App. D.C. 259, 263–265, 418 F.2d 1095, 1099–

1101 (1969). Information concerning dangerousness, therefore, should be presented to the court to allow it to make a full inquiry and reach a proper conclusion.

13. A close analogy is the similar requirement obtaining with reference to affidavits supporting requests for search and arrest warrants. *See, e. g.,* Aguilar v. Texas, 378 U.S. 108, 110–111, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

14. D.C.Code § 21–527 (1967).

15. D.C.Code § 21–525 requires that a hearing be held within 24 hours after it is requested.

hearing.[16] The judge in his § 21–524 order should appoint the Public Defender Service to represent the patient, at least until retained counsel notes his appearance, and a copy of the order should be served on the patient as well as the Service. By this procedure a hearing can be quickly requested and concluded in an appropriate case and thus many persons may be spared unnecessary days in the hospital.

We affirm the judgment of the District Court in this case. While the procedure followed was not completely in accord with that required by this opinion for future cases, in view of the concessions of appellant's counsel in chambers, no useful purpose would be served by requiring a new hearing here.

Affirmed.

16. *See* Heryford v. Parker, 396 F.2d 393, 396 (10th Cir. 1968).